# United States Court of Appeals
## For the First Circuit

No. 06-1502

UNITED STATES OF AMERICA,

Appellee,

v.

LYNN M. ALBERICO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,

Lipez and Howard, Circuit Judges.

Alan D. Campbell for appellant.
John-Alex Romano, Attorney, Criminal Division, United States
Department of Justice, with whom Michael J. Sullivan, United
States Attorney, and William F. Bloomer, Assistant United States
Attorney, were on brief, for appellee.

March 5, 2009

**HOWARD**, **Circuit Judge**.  Lynn Alberico appeals from her conviction for conspiracy to commit money laundering.  She was charged along with George Upton, her long time boyfriend, who was convicted of conspiracy to commit money laundering in a separate trial.  Upton's appeal is also before us, and is the subject of a companion opinion.  United States v. Upton, No. 05-1593, __ F.3d __, slip op. at 1 (1st Cir. Mar. 5, 2009).

Alberico argues that the only conduct alleged during the statute of limitations -- her failure to file a tax return for 1999 -- was not part of the conspiracy.  She also claims that the district court erred in refusing to instruct the jury on the statute of limitations.  We reject both arguments and affirm.

**I.**

We recite the facts in the light most favorable to the verdict.  See United States v. Boulanger, 444 F.3d 76, 89 (1st Cir. 2006).

Alberico owned a tailoring and alterations business on Cape Cod, Massachusetts.  Her boyfriend of approximately 20 years, George Upton, owned Look Motors, Inc., a used car lot in Hyannis, Massachusetts.  Their relationship ended at some point in late 1998 or early 1999.

In 1999, Alberico admitted to her best friend, Colleen Otto, that she and Upton had stolen a suitcase containing approximately $1 million in cash from lender Steven Queen during

the summer of 1997 and that she and Upton's daughter Jodi had each received $100,000 of that money. Upton and Alberico engaged in a real estate transaction shortly after the theft, allegedly in order to launder the stolen money. The details of the money laundering conspiracy, centering around the August 29, 1997 purchase and January 5, 1999 sale of 89 Iyanough Road, are recounted at length in our companion opinion in Upton. Upton, No. 05-1593, __ F.3d __, slip op. at 2-5.

In August 1998, Alberico filed her tax return for 1997. Her 1997 return was false in that it did not disclose the $100,000 Upton allegedly gave to her from the stolen money, nor did it disclose the rental income from 89 Iyanough Road. In July 2000, Upton also filed a false tax return for 1997, similarly omitting any portion of the stolen money or the rental income. Neither Alberico nor Upton filed a tax return for 1999, the year in which they earned a substantial capital gain from the sale of 89 Iyanough Road.

Alberico's trial was severed from Upton's in August 2004. Alberico was tried in July 2005 on the same three charges that Upton was tried and convicted of: conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(b), (h), and 1957(a); filing a materially false income tax return for the year 1997, in violation of 26 U.S.C. § 7206(1); and failing to file an

income tax return for the year 1999, in violation of 26 U.S.C. § 7203.

Alberico did not request a jury instruction on the statute of limitations issue at any point during trial. She filed a Rule 29(a) motion for acquittal, arguing that the conspiracy did not continue to exist within the applicable statute of limitations. This argument was summary in nature, appearing as part of a list of objections to almost every element of her charged crimes. At the close of the government's case, the trial judge considered and denied the motion. Alberico renewed the motion for acquittal at the close of the evidence, and the district court again denied the motion.

## II.

On appeal, Alberico raises two claims:  the district court committed plain error in not instructing the jury about the statute of limitations, and her motion for acquittal should have been granted because the statute of limitations bars her conviction.

### A.  Jury Instruction

As did Upton, Alberico argues that the district court erred by failing to instruct the jury on the statute of limitations applicable to the money laundering conspiracy. Acknowledging that she did not preserve an objection to the instructions, she argues

that we should review the district court's failure to instruct for plain error.

As we noted in Upton, we have considered the failure to request a jury instruction to waive the right to the instruction. United States v. Muñoz-Franco, 487 F.3d 25, 54 (1st Cir. 2007). It is not clear to us why Alberico did not request a jury instruction on the statute of limitations issue. The issue was mentioned summarily in her motion for acquittal. Under Muñoz-Franco, Alberico's failure to request a jury instruction and failure to object to the instructions as delivered would constitute waiver.

Even if the failure to instruct were to be reviewed for plain error, see United States v. Thurston, 358 F.3d 51, 63 (1st Cir. 2004), rev'd on other grounds, Alberico would fare no better. Alberico acknowledges that she neither requested a statute of limitations instruction nor objected to the lack of such instruction. See Fed. R. Crim. P. 30(a), (d). She argues that whether a crime has occurred within the statute of limitations is a question for the jury to determine beyond a reasonable doubt, and thus the trial judge should have instructed the jury *sua sponte*. The argument fails. Although Alberico did raise the statute of limitations in her motion for acquittal, albeit in a summary fashion, it did not form part of her trial defense.[1] "Where a

---

[1] The statute of limitations issue was not mentioned in Alberico's closing argument.

defendant does not offer a particular instruction, and does not rely on the theory of defense embodied in that instruction at trial, the district court's failure to offer an instruction on that theory *sua sponte* is not plain error." United States v. George, 448 F.3d 96, 100 (1st Cir. 2006) (citation and internal quotation marks omitted.)

### B.  Motion for Acquittal

We review de novo the denial of a motion for judgment of acquittal. United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006). A motion for judgment of acquittal is only granted if "the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the government, are insufficient for a rational fact finder to conclude that the prosecution has proven, beyond a reasonable doubt, each of the elements of the offense." United States v. Pimental, 380 F.3d 575, 583 (1st Cir. 2004).

Much like, but not identically with, Upton, Alberico argues that the government failed to produce evidence sufficient to show that the conspiracy lasted until May 12, 1999.  She argues that the conspiracy to commit money laundering, to the extent that it existed, ended with the sale of 89 Iyanough Road in January 1999.  Alberico does not dispute that she committed one of the tax

crimes she was charged with:  failing to file a return for 1999.[2]
However, she argues that her failure to file was not part of the
money laundering conspiracy and thus does not affect the statute of
limitations calculus.

Further, Alberico contends that the government's argument
-- that her failure to file a tax return in 1999 was part of the
conspiracy and thus may be considered for statute of limitations
purposes -- is foreclosed by the Supreme Court's decisions in
Grunewald v. United States, 353 U.S. 391 (1957) and United States
v. Twitty, 72 F.3d 228 (1st Cir. 1995).  Those cases, she asserts,
indicate that her tax crime could only be considered part of the
conspiracy if the government showed that she and Upton entered into
"an express agreement to conceal" as part of their conspiratorial
agreement.  Twitty, 72 F.3d at 234.  The government, she contends,
failed to show that such an express agreement existed.

We rejected substantially the same argument in Upton.
Upton, No. 05-1593, __ F.3d __, slip op. at 11-23.  Unlike the
defendants in Grunewald and Twitty, who were charged under the
general conspiracy statute, 18 U.S.C. § 371, Alberico is charged
under 18 U.S.C. §§ 1956(a)(1)(b), (h), and 1957(a), concerning
conspiracy to commit money laundering.  Money laundering under
section 1956 is defined as:

---

[2] Alberico states in her appellate brief that she disputes her
conviction for filing a false tax return, although she is not
specifically appealing that conviction here.

> [A] financial transaction . . . involv[ing]
> the proceeds of a specified unlawful activity
> . . . knowing the transaction is designed in
> whole or in part -- to conceal or disguise the
> nature, the location, the source, the
> ownership, or the control of the proceeds . .
> .

Where, as here, the crime that is the object of the conspiracy has the intent to conceal as an element, the success of the conspiracy itself may depend on concealment. Accordingly, additional acts of concealment may be said to further the central objective of the conspiracy. See, e.g., United States v. Goldberg, 105 F.3d 770, 774 (1997); United States v. Mann, 161 F.3d 840, 859 (5th Cir. 1998); United States v. Esacove, 943 F.2d 3, 5 (5th Cir. 1991).

Here, a reasonable jury could have concluded that Alberico's failure to file a 1999 tax return constituted an act of concealment in furtherance of Upton's and Alberico's money laundering scheme. In 1999, both Upton and Alberico were legally required to report a capital gain on the sale. As we noted in Upton, this required capital gains disclosure could have undone the entire money-laundering scheme, not only subjecting the defendants to prosecution, but also resulting in forfeiture of the illicit proceeds. Upton, No. 05-1593, __ F.3d __, slip op. at 17; 18 U.S.C. § 981(a). A reasonable jury could have found that avoiding such outcomes was a primary goal of the concealment money laundering conspiracy.

-8-

Because a reasonable jury could conclude that Alberico's failure to file her 1999 tax return was "done in furtherance of the main objectives of the conspiracy," Grunewald's requirement of an "express agreement to conceal" does not directly apply. Grunewald drew a distinction between "acts of concealment done in furtherance of the main objectives of the conspiracy," and "acts of concealment done after these central objectives have been attained for the purposes of covering up after the crime." 353 U.S. at 405. The Court in Grunewald merely established that, where the latter is involved, the government needs to show "an express agreement to conceal."

Here, however, the acts of concealment were done in furtherance of the main objectives of the money laundering conspiracy. Accordingly, so long as the act or acts of concealment committed were "foreseeable," they may be considered for statute of limitations purposes. See United States v. Hansen, 434 F.3d 92, 103 (1st Cir. 2006); United States v. Pinillos-Prieto, 419 F.3d 61, 69 (1st Cir 2005). Here, they were plainly so. As we noted in Upton, "[n]ot filing returns was an 'integral and self-evident part of' the conspiracy -- had either Upton or Alberico not hidden the proceeds of the house sale, this would have defeated the primary purpose of the conspiracy." Upton, No. 05-1593, __ F.3d __, slip op. at 22-23.

Alberico also advances a policy argument in favor of her position. She asserts that allowing her failure to file a tax return as conduct done in furtherance of the objective of the conspiracy would strip the statute of limitations of any meaning. She argues that there is no practical limit to the statute of limitations in a money laundering conspiracy prosecution, because any individual co-conspirator, acting alone, could revive or extend the conspiracy by failing to file a tax return at some point in the future.

We will not hypothesize that all money laundering conspiracies necessarily involve tax reporting obligations at all, or obligations to report capital gains, or taxable real estate transactions. But on the facts in this case, the failure to file and report capital gains was directly relevant to the conspiracy, and the failure to file was within a short time and thus likely to be a part of the conspirators' agreement. Moreover, we can agree that in some circumstances a conspirator's subsequent act of concealment could be too attenuated from the conspiracy's primary concealment money laundering objective to constitute an act in furtherance of the conspiracy. That scenario, however, is not this case.

For the reasons expressed above, we affirm Alberico's conviction.

**Affirmed**.

-10-

**-Dissenting Opinion Follows-**

**LIPEZ, <u>Circuit Judge</u>**, dissenting in part.  Appellant Alberico's conviction on Count Four of the indictment should be reversed for the reasons set forth in my partial dissent in <u>United States</u> v. <u>Upton</u>, No. 05-1593.